# UNITED STATES DISTRICT COURT

Southern _____ DISTRICT OF California _____

In the Matter of the Search of
(Name, address or brief description of person, property or premises to be searched)

Nutri-Sport
7710 Balboa Avenue,
San Diego, CA 92111

**APPLICATION AND AFFIDAVIT
FOR SEARCH WARRANT**

Case Number: 08 MJ 0287

FILED
08 JAN 31 AM 10: 44
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY: _____ DEPUTY

I, AYOMA RUDY _____ being duly sworn depose and say:

I am a(n) Diversion Investigator, Drug Enforcement Administration _____ and have reason to believe
                                    Official Title

that ☐ on the person of or ☑ on the property or premises known as (name, description and/or location)

Nutri-Sport
7710 Balboa Avenue,
San Diego, CA 92111

in the Southern _____ District of California _____

there is now concealed a certain person or property, namely (describe the person or property to be seized)
Bottles and/or tablets of Lipodrene believed to contain 25 mgs of Ephedrine alkaloids, and records relating to distribution of List I Chemicals and Lipodrene, and documents and records relating to HI-TECH PHARMACEUTICALS.
As more fully described in Attachment B.

which is (state one or more bases for search and seizure set forth under Rule 41(b) of the Federal Rules of Criminal Procedure)

evidence of violations of Title 21, United States Code, Section §841, §822, and §830.

concerning a violation of Title  21  United States code, Section(s)  841, 822 and 830

The facts to support a finding of probable cause are as follows:
Please see attached documents.

Continued on the attached sheet and made a part hereof:    ☑ Yes    ☐ No

_____
Signature of Affiant

Sworn to before me and subscribed in my presence,

1/31/08 _____      at    San Diego, CA
Date                                          City             State

BARBARA L. MAJOR
U.S. MAGISTRATE JUDGE
Name of Judge / Title of Judge

_____
Signature of Judge

## AFFIDAVIT

I, Ayoma Rudy being duly sworn, hereby state:

### INTRODUCTION

1. I am a Diversion Investigator (D/I) with the United States Department of Justice, Drug Enforcement Administration (DEA) and have been so employed for approximately (2 & 1/2) years. Prior to my tenure as a D/I, I have been with DEA since 1996. As a D/I, I have successfully completed an intensive 12-week Basic Diversion Investigator Training at the DEA Justice Training Center in Quantico, Virginia.

2. As a D/I, I am responsible for investigating the illegal diversion of controlled substances and listed chemicals into other than legitimate medical, scientific, and industrial channels, in violation of Title 21, United States Code. In that capacity, I have participated in investigations of registered practitioners, such as medical doctors and pharmacists, regulated persons, and others. As a D/I, I have investigated controlled substance handlers from the retail level to the manufacturing and exporting level, including the accumulation of proceeds from the sale of controlled substances and listed chemicals. In the course of my employment with DEA Diversion, I have learned that records for controlled substances and listed chemicals should be readily retrievable and maintained for two years.

3. The information contained in this affidavit is based on my investigation, my training, experience and information related to me by other law enforcement agents, my review of documents and my review of the Controlled Substance Act.

   a. There is probable cause to believe that NUTRI-SPORT (Fitness Store), a regulated seller ie: a retail distributor located at 3683 Midway Drive, San Diego, CA 92110, contains fruits, instrumentalities and evidence of a violation of Title 21, United

1  States Code, Sections 841(f)(2), 822 (a)(1), 830 (a)(1), 830 (a)(2), 830 (a)(3) & 830 (a)(d).

2      b.    Searches conducted of San Diego Business Tax and California Secretary of
3  State databases revealed that other Nutri-Sport stores in San Diego County advertised on-
4  line appear to be individually owned with no corporate headquarters.

## PROBABLE CAUSE

7      4.    Since this affidavit is being submitted for the limited purpose of seeking a
8  warrant authorizing the search of the above specified property, I have not set forth each
9  and every fact learned during the course of this investigation, nor have I summarized each
10 and every factual circumstance deemed to be pertinent to the case.  Rather, I have set
11 forth only those facts that I believe are necessary to establish probable cause for the
12 requested warrant.

## INVESTIGATION OVERVIEW

15     5.    I am currently investigating NUTRI-SPORT, a Fitness Store involved in the
16 sale of Lipodrene, a Dietary Supplement that contains Ephedrine Alkaloids.  Ephedrine, its
17 salts, optical isomers and salts of optical isomers is a List I Chemical.  Based on my review
18 of CHEMS, the Chemical Control Section of DEA along with other DEA databases,
20 NUTRI-SPORT located at 3683 Midway Drive, San Diego, CA 92110 is not registered with
21 DEA to sell List 1 Chemicals.  Additionally, the ban on dietary supplements containing
22 ephedrine alkaloids by the U.S. Drug and Food Administration (FDA) became effective on
23 April 12, 2004.

24     6.    In September 2007 and December 2007, two undercover purchases of
25 Lipodrene were made by DEA agents at NUTRI-SPORT, 3683 Midway Drive, San Diego,
26 CA 92110.  DEA undercover agents purchased two bottles of Lipodrene in September
27 2007 and three bottles in December, 2007 at $65.00 a bottle.  On both occasions, the

1  agents noticed about five or six bottles of Lipodrene behind the sales counter. The label
2  on each bottle that was purchased clearly indicated that the tablets in the bottle contained
3  25 mg ephedrine alkaloids. Each bottle contained 100 tablets and is manufactured for HI-
4  TECH PHARMACEUTICALS. The DEA undercover agent noted that no identity check
5  was conducted by the seller nor was the transaction annotated in a log on either occasion.
6  The agent remained in the store for a total of about fifteen minutes during the December
7  purchase. After purchasing the bottles of Lipodrene in December of 2007, while still in the
8  store, the agent had a conversation with the owner about potentially purchasing "a lot more
9  bottles" of Lipodrene, specifically about 200 bottles. The Midway owner said that he (the
10 owner) receives about 150 bottles of Lipodrene "each time" from "his guy." The Midway
11 owner wrote down the agent's cellular phone number and said he would have to check with
12 his guy about the availability of a larger quantity of Lipodrene. About five minutes after the
13 agent left the store, while the agent was still in the parking lot, the agent received a call on
14 his cellular phone from the owner of the Midway store, telling the agent to contact "Shelton"
15 at a second NUTRI-SPORT store located at 7710 Balboa Avenue, San Diego, CA 92111.
16 The Midway store owner told the agent that "Shelton" had 200 bottles available and knew
17 how many bottles the agent was interested in purchasing.

     7.   Lab Analysis by the DEA, San Diego indicated each Lipodrene tablet
contained 17.8 mg of l-Ephedrine. The total amount of pure drug for 300 tablets (3 bottles)
was calculated at 5.3 gms total pure drug l-Ephedrine. Forensic Chemist Dan Roesch of
the DEA Southwest Lab confirmed that chemical ephedrine comes in two forms, l-
ephedrine or d-ephedrine and l-ephedrine is utilized to make d-methamphetamine making
d-methamphetamine a potent product sought after by drug abusers.

     8.   In 2006, HI-TECH PHARMACEUTICALS, a company based in Norcross,

Georgia was indicted (Case No 1:06-CR-382-JTC-(LTW) for illegal importation of prescription drugs, including controlled substances and introduction of adulterated and unapproved drugs into the United States. The indictment further alleges that HI-TECH PHARMACEUTICALS would then fraudulently market and sell those drugs in the United States. HI-TECH PHARMACEUTICALS also manufactures and sells dietary and herbal supplement products, from which it claimed approximately $29 million in sales in 2006.

9. In 2006, at the request of the FDA, and a complaint filled by the U.S. Attorney's Office for the Northern District of Georgia, U.S. Marshals seized dietary supplements Lipodrene, Stimerex-ES, Betadrene that are labeled as containing 25 mg of ephedrine alkaloids per tablet manufactured, marketed and distributed by HI-TECH PHARMACEUTICALS. Through this action, FDA in conjunction with the Department of Justice prevented approximately $3,000,000 worth of products from reaching consumers and endangering their health. The U.S. Marshals seizure included more than 200 cases of finished product, more than 200 boxes of bulk tablets and nine (9) 25 kilogram drums of ephedrine alkaloid raw material. Furthermore, according to the FDA a final rule declared all dietary supplements containing ephedrine alkaloids adulterated, and therefore illegal for marketing in the United States. No dosage of dietary supplements containing ephedrine alkaloids is safe and the sale of these products in the United States is illegal and subject to FDA enforcement.

10. Based upon my training, experience and my participation in other investigations involving controlled substances and listed chemicals, and my discussions with other state and federal officers, I know the following:

11. Under 21 U.S.C. §841 (f)(2), Whoever possesses any listed chemical, with knowledge that the recordkeeping or reporting requirements of section 830 of this title have

1  not been adhered to, if after such knowledge is acquired, such person does not take
2  immediate steps to remedy the violation shall be fined under Title 18 or imprisoned not
3  more than one year, or both.
4      12.    Under 21 U.S.C. §822 (a)(1), Every person who manufactures or distributes
5  controlled substances or List I chemical, or who proposes to engage in the manufacture or
6  distribution of any controlled substances or List I chemical, shall obtain annually a
7  
8  registration issued by the Attorney General in accordance with the rules and regulations
9  promulgated by him.
10      13.    Under 21 U.S.C. §830(a)(1), Each regulated person who engages in a
11  regulated transaction involving a listed chemical, a tabling machine or an encapsulating
12  machine shall keep a record of the transaction for two years after the date of the
13  
14  transaction
15      14.    Under 21 U.S.C. §830(a)(2), A record under this subsection shall be
16  retrievable and shall include the date of the regulated transaction, the identity of each
17  party to the regulated transaction, a statement of the quantity and form of the listed
18  chemical, a description of the tableting machine or encapsulating machine, and a
19  
20  description of the method of transfer. Such record shall be available for inspection and
21  copying by the Attorney General.
22      15.    Under 21 U.S.C. §830(a)(3), It is the duty of each regulated person who
23  engages in a regulated transaction to identify each other party to the transaction. It is the
24  duty of such other party to present proof of identity to the regulated person. The Attorney
25  General shall specify by regulation the types of documents and other evidence that
26  
27  constitute proof of identity for purposes of this paragraph.
28      16.    Under 21 U.S.C. §830 (d), The Combat Methamphetamine Epidemic Act

(CMEA) of 2005 (Title VII of the USA Patriot Improvement and Reauthorization Act of 2005, Public Law 109-177), was signed into law March 9, 2006. The CMEA primarily affects persons selling products containing List 1 Chemicals Ephedrine, Psuedoepedrine and Phenylpropalamine.

<u>Effective April 8, 2006</u>

a.   The change to 21 U.S.C. § 830 that adds a new subsection (d) Scheduled Listed Chemicals; Restrictions on Sales Quantity; Requirements Regarding Nonliquid Forms:

   i. This sets the daily sales limit of ephedrine base, psuedoephedrine base or phenylpropalamine base at 3.6 grams per purchaser, regardless of the number of transactions.

   ii. Affects regulated sellers and persons required to submit mail order reports under 21 U.S.C. 830(b)(3).

   iii. Requires all nonliquid forms (including gel caps) to be in 2-unit blister packs (with exceptions when blister pack is not technically feasible, the product may be in unit dosage packets or pouches).

b.   The change to 21 U.S.C.§ that adds (2) Mail-Order Reporting; Verification of Identity of Purchaser; 30-Day Restriction on Quantities for Individual Purchases:

   i. This requires the mail-order seller to confirm the identity of the purchaser prior to shipping the product.

   ii. Limits such sales to 7.5 grams per customer during a 30-day period.

c.   The change to 21 U.S.C. § 844 (a) entitled Restrictions on Quantity Purchased During 30-Day Period:

   i. This makes it unlawful for any person to knowingly or intentionally

purchase at retail more than 9 grams during a 30 day period (of which no more than 7.5 grams can be imported by private or commercial carrier or the Postal Service).

<u>Effective September 30, 2006</u>

Sales Limits

    a. A mobile retail vendor may not sell more than 7.5 grams of product per customer during a 30-day period.

Based on probable cause that evidence of the crime will be found at the location set forth below, premises are further described in Attachment A.

    a. 3683 Midway Drive, San Diego, CA 92110.

## THE ITEMS TO BE SEIZED

17. The items to be seized are evidence of violations of Title 21, United States Code, Section §822, and §830.

    a. Bottles and/or tablets of Lipodrene believed to contain 25 mgs. Ephedrine Alkaloids.

    b. Letters, cables, telegrams, telephone bills, address books, rolodexes, photographs, videos and documents reflecting the illegal distribution of List I Chemicals, including Lipodrene and ephedrine alkaloids.

    c. Books, records, receipts, notes, ledgers and other documents relating to the sale of all Dietary Supplements that contain Ephedrine Alkaloids.

    d. Documents and records relating to HI-TECH PHARMACEUTICALS and the purchase or distribution of Lipodrene.

## CONCLUSION

18. Based on the information as outlined herein, and on the advise, experience and knowledge of myself and other agents involved in this investigation, I believe that there is probable cause for the issuance of the requested search warrant.

*[signature]*
AYOMA RUDY
Diversion Investigator
Drug Enforcement Administration

Sworn and Subscribed to before me this 31st day of January, 2008.

*[signature]*
UNITED STATES MAGISTRATE JUDGE